# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>*Lewis et al. v. Kansas City Chiefs Football Club, Inc.* | **Hon. Anita B. Brody**<br><br>No. 14-1995 |

**January 14, 2019**　　　　　　　　　　　　　　　　　　　　　　　　　　　**Anita B. Brody, J.**

## MEMORANDUM

Cynthia Phillips ("Phillips") seeks to permissively intervene in *Lewis, et al. v. Kansas City Chiefs Football Club, Inc.*, No. 14-1995 (E.D. Pa.) ("*Lewis*") to assert a claim against Defendant the Kansas City Chiefs Football Club, Inc. (the "Chiefs") for loss of consortium related to head injuries her ex-husband sustained while playing for the Chiefs. In *Lewis*, former Chiefs players—including Phillips's ex-husband, Joseph Phillips[1]—bring claims against the Chiefs for harms arising from concussive and sub-concussive injuries suffered during their time playing football for the Chiefs. Phillips asserts that permissive intervention is warranted because her loss of consortium claim shares common issues of law or fact with the claims in *Lewis*. The Chiefs argue that intervention should be denied because Phillips's claim is untimely, and because

---

[1] Proposed Intervenor Cynthia Phillips is referred to as "Phillips." Proposed Intervenor's former husband is referred to as "Joseph Phillips."

1

Phillips's loss of consortium claim is precluded by the NFL Concussion Settlement (the "Settlement"). For the reasons stated below, I will deny Phillip's Motion to Intervene.

I. **BACKGROUND**

A. **The NFL Head Concussion MDL**

In July 2011, retired football players began filing lawsuits against the National Football League, the NFL Properties (LLC), and individual NFL teams[2] (collectively, the "NFL Defendants"). These suits alleged, among other things, that the NFL Defendants breached their duties to the players by failing to take reasonable actions to protect players from the chronic risks created by concussive and sub-concussive head injuries and that the NFL Parties concealed those risks from those players. Since that time, more than 5,000 former players and their family members have filed over 300 substantially similar lawsuits. These lawsuits have been consolidated before me as a multidistrict litigation ("NFL Concussion MDL"), pursuant to 28 U.S.C. § 1407. *See* MDL Panel Transfer Order, Jan. 31, 2012, ECF No.1 (*NFL Concussion MDL*).

B. **The Class Action Settlement**

On July 7, 2014, I entered an order granting preliminary approval of the Settlement between the NFL Defendants and a proposed Settlement Class. Order ¶¶ 2(a), ECF No. 6084 (*NFL Concussion MDL*). The proposed Class consisted of:

> All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order [July 7, 2014], retired, formally or informally, from playing professional football with the NFL or any Member Club . . . ("Retired NFL Football Player"); . . . and [s]pouses parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by

---

[2] This included the Kansas City Chiefs.

reason of their relationship with a Retired NFL Football Player ("Derivative Claimants").[3]

Settlement Agreement §§ 1.1, 2.1, ECF No. 6481-1 (*NFL Concussion MDL*).

The Settlement contained a broad release of claims by Class Members against the NFL Defendants. Each Class Member released any claims against the NFL Defendants, including individual NFL teams, that "could have been asserted in the Class Action Complaint or any other Related lawsuit." Settlement Agreement § 18.1(a). The Settlement explicitly released, among others, claims "arising out of, or relating to, head, brain, and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events;" claims "arising out of, or relating to, CTE [Chronic Traumatic Encephalopathy];" and claims "arising out of, or relating to, loss of support, services, consortium, companionship, society, or affection, or damage to familial relations." Settlement §§ 18.1(a)(ii)-(iv).[4]

The Preliminary Approval Order also directed the implementation of the notice program proposed by the parties. The notice program informed Class Members of their rights under the Settlement and told them that if they did not affirmatively opt out of the Settlement by October 14, 2014, they would be bound by the Settlement's release. Class Members had approximately 90 days to decide whether to opt out.

On April 22, 2015 (as amended on May 8, 2015), I issued a Final Order and Judgment approving the Settlement and certifying the Settlement Class. I found that the notice program complied with both Rule 23 and due process. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 383-86 (E.D. Pa. 2015) (finding that the Long-Form Notice "was written in

---

[3] Phillips is a Derivative Claimant. *See infra* Section III(A)(1).

[4] This release was expressly incorporated into the Final Order and Judgment approving the Settlement. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 425 (E.D. Pa. 2015).

plain and straightforward language" and "apprised all Class Members of . . . the opportunity to opt out the Settlement; and the binding effect of a class judgment on Class Members"). The Third Circuit affirmed the Final Order and Judgment, including my finding that the notice program complied with both Rule 23 and due process requirements. *See In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 535-36 (3d Cir. 2016) (observing that "[t]he notice . . . outlined the rights of players to . . . potentially opt out. If a retired player chose to opt out, he would not benefit from the settlement but would not release his claims against the NFL.").

### C. The Settlement's Notice Program

The notice program included direct individual notice to identifiable Retired NFL Football Players and their heirs and paid publication in various media sources. The Notice was publicized through full-page advertisements in *Ebony, People, Sports Illustrated,* and *Time*; thirty-second television commercials on ABC, CBS, CNN, and other television stations; and ads on popular internet sites. The Claims Administrator also established a Settlement Website containing links to the Long-Form Notice and the Settlement and providing answers to frequently asked questions. Plaintiffs' notice expert estimated that this plan would reach approximately 90% of Class Members. Additionally, the formal notice program was supplemented by the extensive news coverage of the NFL concussion litigation and the Settlement. This included at least two articles published on the website of the *Observer-Reporter*, the newspaper covering Washington County, Pennsylvania, where Phillips lives. *See* Def.'s Opp'n Exs. 6, 7.

Both a Long-Form Notice and Summary Notice were distributed, and both were written in plain and straightforward language. The notices explicitly stated that Derivative Claimants were included in the Settlement Class. *See* Summary Notice at 1 ("The Settlement Class includes immediate family members of retired players . . . ."); Long-Form Notice at 8 ("This Settlement

4

Class includes . . . Derivative Claimants," defined as "any . . . persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a . . . Retired NFL Football Player.").

Among other things, the notice program informed class members that if they did not individually opt out of the Settlement before the deadline (October 14, 2014), they would lose their right to sue the NFL Parties. *See, e.g.,* Summary Notice at 1 ("All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the class by **October 14, 2014**."); Long-Form Notice at 2 ("[opting out] is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case . . . ."); Long-Form Notice at 19 ("if you want to retain the right to sue the NLF Parties about the legal issues in this case, then you must take steps to remove yourself form the Settlement. You may do this by asking to be excluded from—opting out—of the Settlement Class."); Long Form Notice at 20 ("Unless you exclude yourself (opt out), you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves. If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014**.").

The Notice materials repeatedly directed readers to sources that could answer any questions they had about the Settlement. Both the Summary Notice and the Long-Form Notice contained a banner at the bottom of each page instructing those with "Questions?" to call a toll-free support number or visit the Settlement Website. The Long-Form Notice also included five warnings that the Long-Form Notice was only a summary, and that readers should look to the Settlement for specific details. *See* Long-Form Notice at 2, 6, 7, 15, 19 ("This Notice is only a

5

summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement [on the Settlement Website]."). Finally, the Long-Form Notice included contact information for class counsel. *See* Long-Form Notice at 23.

**D. Cynthia Phillips and the *Lewis* Action**

Phillips was previously married to Joseph Phillips. From 1992-1998, during their marriage, Joseph Phillips was a professional football player with the Chiefs. Mot. at 1.

On December 5, 2013, Joseph Phillips, along with other former Chiefs players and their spouses, filed this action against the Chiefs in Missouri state court. Phillips alleged that the Chiefs' "wrongful conduct . . . directly caused or directly contributed to cause [him] to develop post-concussion syndrome and latent brain disease, including . . . [CTE]." Mot. attach. A at 9. On January 2, 2014, the Chiefs timely removed *Lewis* to the United States District Court for the Western District of Missouri. *See* Notice of Removal (Jan. 4, 2014), ECF No. 1 (*Lewis*). On April 3, 2014, the Judicial Panel on Multidistrict Litigation transferred *Lewis* to this Court as part of the NFL Concussion MDL, finding that the action shared numerous questions of law and fact with those already pending in the MDL. *See* Original Record at 2-3, ECF No. 1 (*Lewis*).

The *Lewis* action was covered by several national media outlets during the month the action was filed. In December 2013, *USA Today*, the *New York Times*, *Forbes*, and *ESPN* published articles about the lawsuit online, all of which listed Phillips's ex-husband by name as a plaintiff. *See* Def.'s Opp'n Exs. 1-4.

During the opt-out period, Phillips's ex-husband and most of the other *Lewis* plaintiffs timely filed opt-out requests. *See* NFL Concussion Settlement: Opt Out Report, Ex. 1 at 5, (Nov. 3, 2014), ECF No. 6340-1 (*NFL Concussion MDL*) (listing timely opt outs). After Final Approval of the Settlement, I issued case management orders for all pending actions by opt-out

plaintiffs, including the *Lewis* plaintiffs. ECF Nos. 7477, 8030 (*NFL Concussion MDL*). In compliance with these orders, Phillips's ex-husband and the other *Lewis* plaintiffs submitted a renewed motion to remand on July 13, 2017, and Short-Form Complaints on July 27, 2017. ECF Nos. 7966, 8137-8154 (*NFL Concussion MDL*). The remand motion was fully briefed, and I held oral argument on April 16, 2018. *See* ECF 9872 (*NFL Concussion MDL*).

On August 30, 2018, Phillips filed her Motion to Intervene. The motion was filed nearly five years after the *Lewis* action was filed, and approximately four years after the Settlement opt-out period ended. Phillips's motion incorporates her ex-husband's allegations against the Chiefs by reference, and asserts that Phillips suffered a loss of consortium as a result of the Chiefs' alleged wrongful conduct and resulting injuries to Joseph Phillips. Mot. at 2.

On September 21, 2018, Phillips's ex-husband and most of the other *Lewis* plaintiffs filed a stipulation of dismissal of their claims. ECF No. 67 (*Lewis*). This stipulation of dismissal followed confidential settlement discussions. Def.'s Opp'n at 7. On January 3, 2019, I granted the Chiefs' motion to dismiss the claim of the only remaining *Lewis* plaintiff, Anita Martin, because her claim was precluded by the Settlement. ECF No. 81 (*Lewis*).

## II. LEGAL STANDARD

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "Whether to grant permissive intervention under Rule 24(b) . . . is within the discretion of the district court." *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir.

7

1992). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III. DISCUSSION

Phillips argues that her action for loss of consortium shares a question of law or fact with her ex-husband's action, that her motion to intervene is timely, and that intervention will not unduly delay or prejudice adjudication of the parties' rights. The Chiefs do not contest that Phillips's action and her ex-husband's action share a common question of law or fact, but contend that her motion is untimely. In addition, the Chiefs argue that the Settlement precludes the claim Phillips seeks to assert by intervention.

For two reasons, I will deny Phillips's Motion to Intervene. First, intervention would be futile because the Settlement precludes Phillips's loss of consortium claim. Second, Phillips's motion is untimely.

### A. **Phillips's Motion to Intervene is Futile Because her Claim is Precluded by the Class Action Settlement**

Intervention is not warranted because the Settlement precludes the claim Phillips seeks to assert. A district court has the discretion to deny a motion to intervene where intervention would be futile. *See In re Fine Paper Antitrust Litig.*, 695 F.2d at 501 (noting that "it would be futile to allow intervention in order to present grounds on appeal which [the court has] already rejected]"); *see also Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 582 (6th Cir. 1982) (affirming a

district court's decision to deny a motion to intervene in part because the relief sought by the proposed intervenor was "unavailable as a matter of law").

1. **Phillips is a Settlement Class Member Who Did Not Opt Out**

The Settlement Agreement defines the Settlement Class as "all Retired NFL Football Players, Representative Claimants and Derivative Claimants" who do not "timely and properly exercise the right to be excluded from the Settlement Class." Settlement Agreement §§ 1.1(a-b). "Retired NFL Football Players" encompasses "all living NFL Football Players who, prior to July 7, 2014, "retired . . . from playing professional football with the NFL or any Member Club." *Id.* § 2.1(ffff). The Settlement defines "Derivative Claimants" as "spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player . . . ." Settlement Agreement § 2.1(ee). Phillips is a Derivative Claimant because she has a claim against the Chiefs under applicable state law "by reason of [her] relationship with a Retired NFL Football Player."[5] Joseph Phillips, Phillips's ex-husband, is a Retired NFL Football Player under the definition of the Settlement because he stopped playing professional football after 1998. Phillips's loss of consortium claim exists because she was married to Joseph Phillips while he played for the Chiefs. Phillips did not timely opt out of the settlement. *See* NFL

---

[5] By asserting a right to sue the Chiefs for loss of consortium, Phillips properly asserts a right, under applicable state law to sue the Chiefs by reason of her relationship with Joseph Phillips. This right is properly asserted because, under Missouri law, a party may bring a claim for loss of consortium based on injuries to the former spouse after the marriage has ended. Divorce limits the period for which damages may be recovered, but does not bar the claim. *See Richardson v. Volkswagenwerk, A.G.*, 552 F. Supp. 73, 87–88 (W.D. Mo. 1982) (citing *Hodges v. Johnson,* 417 S.W.2d 685, 693 (Mo. App. 1967)) (allowing a loss of consortium claim based on injuries to the plaintiff's ex-spouse, but limiting damages to those accrued during the term of the marriage). *Cf.* Restatement (Second) of Torts § 693 cmt. h (Am Law Inst. 1977) (noting that annulment of a marriage does not bar a loss of consortium action for injuries sustained during the marriage).

Concussion Settlement: Opt Out Report, Ex. 1 at 5, (Nov. 3, 2014), ECF No. 6340-1 (*NFL Concussion MDL*) (listing timely opt outs). Therefore, Phillips is a Derivative Claimant and a Settlement Class Member.

### 2. Phillips Was Not Exempt from the Requirement to Individually Opt Out

Phillips argues that she did not need to independently opt out of the Settlement, because her ex-husband opted out. Reply Br. at 2-3. This is incorrect. The right to opt out of a class action is one that must be exercised individually. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998). *See also* William Rubenstein et al., Newberg on Class Actions §9:49 (5th ed. 2013) ("The right to opt out in a Rule 23(b)(3) class action is considered an *individual* right."); *Sloan v. Winn Dixie Raleigh, Inc.*, 25 F. App'x 197, 198 (4th Cir. 2002) (finding that a class representative could not opt out on behalf of individual class members). Indeed, to allow a class representative, counsel, or other individual to opt out on behalf of other class members would "infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members." *Hanlon*, 150 F.3d at 1024 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974)).

The Settlement Agreement and the Summary and Long-Form Notices, approved by this Court and the Third Circuit, clearly communicated that each class member was required to *individually* opt out in order to continue pursuing claims against the NFL parties. *See, e.g.*, Summary Notice at 1 ("If *you* want to keep your right to sue the NFL, *you* must exclude *yourself* from the Class . . . .") (emphasis added); Long-Form Notice at 19 ("[I]f *you* want to retain the right to sue the NLF Parties about the legal issues in this case, then *you* must take steps to remove *yourself* form the Settlement.") (emphasis added); Long Form Notice at 20 ("If *you* want

to maintain *your own* lawsuit relating to the claims released by the Settlement, then *you* must exclude *yourself* (opt out) . . . .") (emphasis added).

Nothing in the Settlement Agreement, this Court's opinion approving the Settlement, or the Notices suggests that the opt-out right did not need to be exercised by *each individual* Class Member, or that any Class Member's opt out could have had the effect of opting out any other Class Member.

3. **Phillips's Claim Was Released by the Settlement and Her Current Suit is Barred by Res Judicata**

The Chiefs argue that the Settlement bars all claims of non-opt-out Class Members, including Phillips, against the NFL Parties for injuries arising from head concussions. The Chiefs are correct. Because Phillips is a Class Member who failed to opt out, *see supra* Section III(A)(1), and because she brings a loss of consortium claim for injuries arising from her ex-husband's alleged head injuries experienced during his time playing for the NFL, her claims are squarely within those released by the Settlement. The Settlement thus precludes her claim.

Claim preclusion bars a plaintiff's claim when there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Attorney Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks omitted). "It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001). Applying res judicata and claim preclusion as a consequence of class action settlement agreements "serves the important policy interest of judicial economy by

permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Id.* (internal quotation marks omitted).

The NFL Concussion Settlement was a final judgment on the merits. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 903 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the merits."); *see also Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (same). Additionally, both parties in this action were parties to the Settlement: Phillips as a Class Member, and the Chiefs as a named party. *See* Settlement Agreement Section 2.1(bbbb)(ii) (including all past or present "Member Clubs" in the definition of "Released Parties").

The only remaining issue is whether Phillips's proposed action against the Chiefs and the Settlement are the same cause of action. The "bounds of preclusion after a settlement" are determined by the "express terms of a settlement agreement, not merely the terms of the judgment." *Toscano*, 288 F. App'x at 38. *See also In re Prudential*, 261 F.3d at 366 (examining the text of a settlement release to determine its claim preclusive effect). In applying a settlement for preclusive effect, "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action . . . ." *TBK Partners Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). *See also Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011) ("The key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement.").

The Settlement release plainly encompasses Phillips's claim. It released all claims that "could have been asserted in the Class Action Complaint or any other Related lawsuit," and explicitly released claims arising out of or related to head injuries, claims arising out of or related to CTE, and claims for loss of consortium. Settlement §§ 18.1(a)(ii-iv). Phillips's motion alleges

this precise claim: that the Chiefs' wrongful conduct caused her ex-husband suffered post-concussion syndrome, latent brain disease, and CTE; and that as a result Phillips suffered a loss of consortium.[6] Mot. at 1-2. The cause of action Phillips asserts is one of the causes of action released by the Settlement. In addition, the factual predicate to Phillips's claim is identical to the factual predicate underlying the settlement agreement: whether the NFL Parties knew of the risks created by concussive and sub-concussive head injuries, failed to take reasonable action to protect players from those risks, and fraudulently concealed those risks from players.

Although the Settlement's release is broad, it was approved by this Court and the Third Circuit. *Cf. Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017) ("It is not unusual for a class settlement to release all claims arising out of a transaction or occurrence."). It is consistent with other broad releases given preclusive effect by the Third Circuit. *See, e.g. In re Prudential*, 261 F.3d at 367; *Grimes v. Vitalink*, 17 F.3d 1553, 1562 (3d Cir. 1994).

Allowing Phillips to intervene to assert her loss of consortium claim against the Chiefs would result in the "relitigation of settled question at the core" of the NFL Settlement. Because Phillips's claim is precluded by the Settlement, intervention would be futile.

### B. **Phillips's Motion to Intervene is Untimely**

In addition to being futile, Phillips's Motion to Intervene is untimely. An application for permissive intervention must be timely. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *Id.* (quoting *NAACP v. New York*, 413 U.S. 345, 366 (1973)). "The mere passage of time . . . does not render

---

[6] Because Phillips did not attach a proposed pleading to her motion, I rely on the characterization of her claim in her motion.

13

an application untimely." *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 325 (3d Cir. 1995). Rather courts consider three factors to determine whether the intervention motion is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.* at 324. "[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Id*.

1. **Stage of the Proceeding**

A "motion to intervene after entry of a decree should be denied except in extraordinary circumstances." *Del. Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania.*, 674 F.2d 970, 974 (3d Cir. 1982). *See also* Charles A. Wright et al., 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.) ("There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment . . . ."). While no decree of judgment has been entered in this case, this is because there are no claims remaining to enter judgment on: all but one of the plaintiffs voluntarily dismissed their claims, and this Court has dismissed the claim of the only plaintiff who did not settle. Phillips contends that this litigation is not at an advanced stage because no discovery has occurred. However, because the parties settled their claims, no discovery is needed. The stage of the proceedings is as advanced as it can possibly be— essentially, the case is at an end. Because the litigation is at such an advanced stage, Phillips must provide a compelling explanation for her four-year delay in filing this motion.

2. **Prejudice the Delay May Cause the Parties**

"[P]rejudice can result when a party seeks to intervene at a late point in litigation," because intervention can delay the resolution of a case. *United States. v. Territory of Virgin Islands*, 748 F. 3d 514, 524 (3d Cir. 2014). Here, the existing parties in the case chose to resolve

their claims by settlement rather than engaging in discovery. At this late stage in the litigation—when all claims have been either settled or dismissed—allowing intervention would prejudice the Chiefs by forcing them to now engage in discovery, and expend time and resources they made the strategic choice to avoid. *Cf. Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (finding that "[a] need to reopen discovery and therefore delay the proceedings" weighed against the timeliness of a motion to intervene); *In re Safeguard Scis.*, 220 F.R.D. 43, 49 (E.D. Pa. 2004) (finding prejudice to the existing parties when intervention would result in the reopening of discovery).

### 3. Reason for the Delay

Phillips's made her request for intervention in August 2018, nearly five years after the *Lewis* action was filed, and nearly four years after the Settlement opt-out period ended. The only reason Phillips puts forth for her delay is that she did not learn of her ex-husband's action against the Chiefs until recently.

"To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994). "The fact that [a proposed intervenor] knew or *should have known* of the pendency of [the action in which they seek to intervene] at an earlier time and failed to act at that time to protect [his or her] interest[ ] weighs heavily against the timeliness of" a motion to intervene. *Del. Valley Citizens' Council*, 674 F.2d at 975 (emphasis added).

Extensive news coverage of a case undermines a proposed intervenor's claim that she was unaware of the litigation. *See Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 507 (3d Cir. 1976) (affirming the district court's finding that "the intervenors cannot reasonably

claim they were unaware of [the underlying litigation]" when it received "continuous and extensive media coverage"); *see also Choike v. Slippery Rock Univ. of Penn. of State System of Higher Educ.*, 297 F. App'x 138, 142 (3d Cir. 2008) (finding that a proposed intervenor became aware of litigation affecting his rights when the filing of the lawsuit "created some publicity").

The month the *Lewis* action was filed, several national media outlets covered the litigation: *USA Today*, the *New York Times*, *Forbes*, and *ESPN* all published articles online discussing the lawsuit and listing Phillips's ex-husband by name as a plaintiff. *See* Def.'s Opp'n Exs. 1-4. While Phillips may be correct that the *Lewis* action, specifically, did not receive media coverage in her county, the NFL Concussion Settlement did. The *Observer-Reporter*, Phillips's local paper, published at least two articles about the NFL concussion litigation and settlement, one in November 2014 and one in April 2015. *See* Def.'s Opp'n Exs. 6, 7. In addition, the Settlement included an extensive notice program, approved by both this Court and the Third Circuit. The notice program included full-page advertisements in *Ebony, People, Sports Illustrated,* and *Time*; thirty-second television commercials on ABC, CBS, CNN, and other television stations; and ads on popular internet sites. This was supplemented by widespread national news coverage of the Settlement. As the Settlement has been implemented, it has continued to receive extensive national and local news coverage, including coverage on the website of the *Observer-Reporter*. *See, e.g.* "Predators Target NFL Concussion Victims, Lawyers Say," Observer-Reporter (September 19, 2017), https://observer-reporter.com/news/regional/predators-target-nfl-concussion-victims-lawyers-say/article_23316218-a158-5ca2-b5f1-025a52385eac.html.

Phillips thus received at least constructive notice of the ongoing NFL concussion litigation, the class action settlement, and the opt-out deadline. Even if Phillips did not see the

national media coverage of the *Lewis* action, she had notice of the Settlement and the potential for her to recover under the Settlement as a Derivative Claimant. It is reasonable to expect her to have investigated whether her ex-husband intended to participate in the Settlement, or whether he intended to opt out and pursue his own litigation against the NFL Defendants.[7] Such an inquiry would have revealed that her ex-husband timely opted out and intended to continue pursuing his claim in the *Lewis* action.[8]

In addition to Phillips's longstanding awareness of the litigation, she has pointed to no change in circumstances or facts since the onset of the *Lewis* action that explain her delay in moving to intervene. A proposed intervention is less likely to be timely if "the circumstances or facts upon which [proposed intervenors] base their claim for relief" have not changed since the onset of the lawsuit. *Del. Valley Citizens' Council*, 674 F.2d at 975. All of the facts giving rise to Phillips's claim for loss of consortium occurred well before the *Lewis* action was filed, and she puts forth no change in the last four years that mitigates her delay in seeking intervention.[9]

All of the existing claims in this case have been fully resolved, either through settlement or through dispositive motions. Thus, "'the interest in basic fairness to the parties and the

---

[7] The Notice materials provided resources for Class Members with questions about the Settlement, including a toll-free hotline and contact information for class counsel. If Phillips was confused about the Settlement or about how to find out her ex-husband's opt-out status, she could have sought clarification from the hotline, the Settlement website, or class counsel.

[8] To the extent Phillips argues that she was wholly unaware of her potential loss of consortium claim against the Chiefs until she learned of the *Lewis* action, this is undermined by Phillips's appearance in a 2007 HBO Real Sports documentary about the burden imposed on her and her family by her ex-husband's time in the NFL, including the challenges her ex-husband experienced after leaving the NFL. This suggests that, in 2007, Phillips was at least aware that she might have a claim against the Chiefs for loss of consortium.

[9] Phillips relies on two Third Circuit cases in which intervention was allowed four or more years after the litigation had commenced. Mot. at 5 n.1. In both of those cases, however, the intervenor had been previously assured by the parties that the intervenor's interests would be protected, and the intervenors sought to intervene immediately after learning of the risk to their rights. *See Mountain Top Condo. Ass'n*, 72 F.3d at 370; *Alcan Aluminum, Inc.*, 25 F.3d at 1182.

expeditious administration of justice' militates against intervention." *In re Fine Paper Antitrust Litig.*, 695 F.2d at 500 (quoting *Rizzo*, 530 F.3d at 507). Considering the advanced stage of the proceeding, that intervention would prejudice the Chiefs, and Phillips' failure to give a compelling explanation for her multi-year delay in seeking intervention, Phillips's motion is untimely.[10]

### IV. CONCLUSION

Intervention would be futile because the Settlement precludes Phillips's loss of consortium claim. Additionally, Phillips's motion to intervene is untimely because all the existing claims in this litigation have been resolved by either settlement or dispositive motions, intervention would prejudice the Chiefs by forcing them to engage in discovery, and Phillips has failed to give a compelling explanation for her multi-year delay in seeking intervention. For both these reasons, I will decline to exercise my discretion to allow permissive intervention. The Motion to Intervene will be denied.

s/Anita B. Brody

_____<br>ANITA B. BRODY, J.

Copies **VIA ECF** on: 1/14/2019

---

[10] Phillips will not be prejudiced by denial of her motion, because her claim is precluded by the Settlement Agreement. *See supra* Section B.